UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

UNITED STATES OF AMERICA,

- against -

MOHAMMED DARWICHE,

Defendant.

----------------------------------------X

12/12/05

04 Cr. 893-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.,**

Defendant Mohammed Darwiche ("Darwiche") has pleaded
guilty to trafficking in counterfeit goods in violation of 18
U.S.C. § 2320, a Class C felony. Darwiche is hereby sentenced to
a term of imprisonment of 366 days. Two years supervised release
is also imposed.

**Prior Proceedings**

Darwiche was arrested on January 22, 2004 and released
on that same day on a personal recognizance bond in the amount of
$100,000. On August 18, 2004, an indictment was filed in the
Southern District of New York, charging that from at least March
2003 through January 2004, in the Southern District of New York,
Darwiche trafficked in handbags and other consumer leather goods,
as well as tags for such goods, bearing counterfeit trademarked
designs that he manufactured, in violation of 18 U.S.C. § 2320.

1

On May 26, 2005, Darwiche appeared before the Honorable Frank Maas in the Southern District of New York and allocuted to his criminal conduct as charged. The defendant's sentencing has been scheduled for December 12, 2005.

## The Sentencing Framework

In accordance with the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005) and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") establishing by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

    (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)   the need for the sentence imposed --

        (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)   to afford adequate deterrence to criminal conduct;

        (C)   to protect the public from further crimes of the defendant; and

        (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

2

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range
      established for --

      (A)   the applicable category of offense committed
            by the applicable category of defendant as
            set forth in the guidelines ...;

(5)   any pertinent policy statement ... [issued by the
      Sentencing Commission];

(6)   the need to avoid unwarranted sentence disparities
      among defendants with similar records who have
      been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of
      the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all
the facts appropriate for determining a sentence, whether that
sentence is a so-called Guidelines sentence or not. See Crosby,
397 F.3d at 111.

## The Defendant

Darwiche was reportedly born on August 25, 1955, in
Marwania, Lebanon, to the marital union of Ali Ahmed Darwiche,
deceased, and Safieh Darwiche, nee Wazni, age 81. The
defendant's father died of a heart attack at the age of 63 in
1986, and previously worked as a merchant. Darwiche's mother is
a homemaker who resides in Lebanon, and presently suffers from
diabetes, high blood pressure, and a fractured leg. The
defendant described a happy childhood, during which he

3

experienced close relationships with his parents and siblings.

Darwiche informed that he immigrated to the U.S. by
virtue of a tourist visa in 1977, and obtained his residency in
approximately 1983. According to the Bureau of Citizenship and
Immigration Services (BCIS), the defendant officially entered the
U.S. on March 3, 1982, and is legally residing in the U.S. as a
permanent resident. Darwiche is amenable to removal proceedings
due to his conviction in the instant offense.

The defendant is married to Rajaa Darwiche, nee Karout,
age 40. Darwiche informed that he met his wife upon returning to
Lebanon in 1986, following his father's death and that she was
reared in the same community. The defendant stated that he
applied for his wife to come to the U.S. in 1987, by virtue of a
tourist visa and that she subsequently became a permanent
resident in approximately 1988. Darwiche related that his wife
is the legal owner of their 99-cent store business and that on
occasion, she works in the store. The defendant stated that with
the exception of suffering from high blood pressure, his wife is
otherwise healthy.

The defendant reported the following eight children by
virtue of his marital union, all of whom reside with him and his
wife, and are well-adjusted and healthy: Diana, age 17;
Stephanie, age 15; Amanda, age 13; Kassim, age 9; Lina, age 7;

4

Lama, age 6; Hussein, age 3; and Reem, age 16 months.

From 2000 to December 2004, the defendant and his family resided in a private house located at 75 Terrace Avenue, Jersey City, NJ. The home was purchased by Darwiche on November 3, 2000, for $280,000, and ultimately sold on August 25, 2004, for $575,000. Darwiche stated that the property had been transferred under his wife's name following a re-finance prior to its sale, and that the money was used to purchase their new home, as well as to open their current business.

Since December 2004, Darwiche and his family have been living in a private, two-family house located at 121 Terrace Avenue, Jersey City, NJ. The residence was purchased on October 21, 2004, for $510,000, and is in the name of Darwiche's wife. Darwiche and his family occupy the basement, first floor and second floor of the home, while the third floor is rented to tenants for $1,800 per month. On January 27, 2005, a conventional 30-year mortgage was secured on the property through First National Bank, located in Scottsdale, AZ, in the amount of $408,000. The monthly mortgage payment is $2,990.44.

Darwiche related that his wife and three older daughters are aware of the charges against him and have been emotionally supportive. The defendant informed that his family members remain somber and are concerned about the outcome of his

5

case.

Darwiche reported no history of mental or emotional problems, and has never been treated for such problems.

The defendant disclaimed the use of drugs or alcohol. A urinalysis conducted at the conclusion of the pre-sentence interview tested negative for illicit substance abuse.

The defendant informed that he completed five years of elementary school and one year of intermediate school at the Amarwania Public School, located in Lebanon, equating it to the U.S. equivalent of a sixth grade education. Darwiche explained that he quit school at the age of 13 in 1968, in order to work and help his parents financially support their family.

Darwiche stated that upon immigrating to the U.S. in 1977, he attempted to learn English over a one-year period through courses at Hunter College and New York University (NYU), both of which are located in New York, NY, as well as Brooklyn College Academy, located in Brooklyn, NY. Darwiche informed that although he can speak and read English minimally, he cannot write in this language.

Since February 2005, the defendant has been employed as the de facto owner of A99-Cent Paradise, located at 3495 Kennedy

6

Boulevard, Jersey City, NJ. Darwiche informed that the business is legally in his wife's name at her insistence, but that he runs the day-to-day operation with the assistance of various family members. The defendant stated that he works full-time, seven days per week, and that all of his earnings, which amount to approximately $365.13 per week, are used for various household expenses. Additionally, Darwiche's wife earns $257.93 per week. The business was reportedly established with a portion of the funds from the sale of the defendant's prior home.

From 1998 to 2004, the defendant owned and operated a business under the name ADiana Handbags, Inc. until 2001; and AK&H Designs, Inc. until 2004; which profited from the sale of leather handbags. Darwiche related that he employed between two and four employees at any given time, and produced merchandise according to demand. The defendant informed that he was also involved in the production of handbags. The defendant stated that he earned approximately $500 per week before the business closed as a result of his involvement in the instant offense and subsequent arrest.

According to the pre-sentence investigation report, Darwiche has a net worth of approximately $318,686.85. His family's total monthly income amounts to $4,992.24. His family's monthly expenses amount to $5,737.44.

7

**The Offense Conduct**

The investigation of the instant offense was conducted by a special agent of the former U.S. Customs Service, now known as Immigration and Customs Enforcement. The agent was investigating individuals suspected of engaging in trafficking in counterfeit trademark merchandise and during the course of her investigation, had frequent discussions with a confidential informant ("CI-1").

CI-1 informed the agent that Darwiche manufactured and distributed counterfeit trademark merchandise, specifically counterfeit Coach, Inc. merchandise, at 208 West 29th Street, Room #211, New York, NY. The premises consisted of office space in a five-story, red brick building and included an adjacent storage room. CI-1 identified Darwiche as the person in charge of the operation.

The agent subsequently obtained business records which confirmed that businesses known as ADiana Handbags, Inc., and AK&H Designs, Inc. had operated with a listed address of 208 West 29th Street, New York, NY. According to the records, ADiana Handbags, Inc. was owned and operated by Darwiche. CI-1 stated that Darwiche closed down his business for a short period of time and when it re-opened, the name had changed from ADiana Handbags, Inc. to AK&H Designs, Inc.

8

On March 28, 2003, the agent visited the building located at 208 West 29th Street, New York, NY, and went to the second floor. The mailman confirmed that ADiana Handbags, Inc., was located at the end of the hallway in Room #211. From the hallway on the second floor, the agent observed the outside door to the premises with the number A211 on it. The agent stood outside the door and heard sewing machines from behind the door.

On May 9, 2003, CI-1 informed the agent that Darwiche had closed down his operations for a short time.

On June 4, 2003, CI-1 informed the agent that Darwiche had resumed business at the premises under the name AK&H Designs, Inc. On June 25, 2003, and August 11, 2003, CI-1 advised the agent that Darwiche had expanded his operation and was now using an adjacent room, accessed through Room #211, to store his finished product of counterfeit handbags.

On October 9, 2003, an undercover agent ("UC-1") went to the premises and met with an individual identified as Darwiche. At that time, UC-1 purchased 31 counterfeit Coach handbags and one counterfeit Coach wallet for approximately $600 from Darwiche. Darwiche also provided UC-1 with corresponding counterfeit tags for this merchandise.

The agent later provided the 31 handbags and the wallet

9

that had been purchased by UC-1, to a representative of a company that specialized in intellectual property investigation and that was authorized to investigate counterfeit trademark violations on behalf of Coach. The investigator determined that all of the items were fake and not produced by Coach, or any of its affiliates, licensees, or agents.

On October 30, 2003, the agent received a letter from a representative of Coach, Inc., who confirmed that Room #211 of 208 West 29th Street, New York, NY, was not an authorized retail location for Coach products.

From November 7, 2003, through November 21, 2003, UC-1 spoke to Darwiche by telephone on numerous occasions to discuss a larger purchase. UC-1 used the telephone number given to UC-1 by Darwiche at the time of UC-1's first purchase. The voicemail for this telephone number identified it as belonging to Darwiche. UC-1 ultimately placed an order for approximately $5,000 worth of merchandise, allegedly for a store in Texas. During these telephone calls, Darwiche indicated to UC-1 what the actual price of particular items of merchandise would be if they had been purchased from Coach legitimately.

On November 21, 2003, the counterfeit Coach merchandise was received in Texas by federal agents. On November 24, 2003, the counterfeit items were forwarded from Texas to the case agent

10

in New York. The case agent later provided the items purchased by UC-1 from Darwiche at the premises for approximately $5,000, to the Coach investigator who determined that all of the items were fake and not produced by Coach, or any of its affiliates, licensees, or agents.

On January 7, 2004, CI-1 visited the premises and observed large amounts of counterfeit Coach merchandise in the storage room attached to Room #211. A few days later, on January 13, 2004, CI-1 again visited Room #211 of the premises and observed continued production of counterfeit Coach products.

Darwiche was arrested by federal authorities on January 22, 2004, following an executed search warrant.

According to the Government, the value of the infringing Coach items counterfeited by Darwiche is approximately $50,000; however, the parties have stipulated that the total loss attributable to Darwiche is no more than approximately $22,810.

## Relevant Statutory Provisions

The maximum term of imprisonment that may be imposed is ten years. See 18 U.S.C. § 2320. If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years. See 18 U.S.C. § 3583(b)(2).

11

The defendant is eligible for not less than one nor more than five years' probation pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, one of the following must be imposed as a condition of probation, unless extraordinary circumstances exist: a fine, restitution, or community service. See 18 U.S.C. § 3563(a)(2).

The maximum fine that may be imposed is $2 million, pursuant to 18 U.S.C. § 3571. A special assessment in the amount of $100 is mandatory. See 18 U.S.C. § 3013.

Full restitution to the victims is required under 18 U.S.C. §§ 3663A and 3664. Restitution in the amount of no more than $22,810 is owed to Coach Inc.

**The Guidelines**

The November 1, 2004 edition of the United States Sentencing Commission Guidelines Manual ("the Guidelines") has been used in this case for calculation purposes, in accordance with U.S.S.G. § 1B1.11(b)(1).

The guideline for a violation of 18 U.S.C. § 2320 is found in U.S.S.G. § 2B5.3, which provides for a base offense level of eight. See U.S.S.G. § 2B5.3(a).

Because the total loss attributable to the defendant with respect to the counterfeit merchandise amounted to no more than approximately \$22,810, the offense level is increased by four levels. See U.S.S.G. §§ 2B5.3(b)(1)(B) and 2B1.1(b)(1)(C).

Because the offense involved the manufacture and importation of infringing items, the offense level is increased by two levels. See U.S.S.G. §§ 2B5.3(b)(2).

Darwiche has shown recognition of responsibility for his offense. Therefore his offense level is reduced two levels. See U.S.S.G. § 3E1.1(a).

The defendant's resulting adjusted offense level is twelve.

## Criminal History

Darwiche was arrested on December 14, 1992 for committing insurance fraud in the second degree. He pled guilty to the offense on June 4, 1993. This criminal conviction results in a subtotal criminal history score of three.

According to the sentencing table at Chapter 5, Part A, a total of three criminal history points places the defendant in a Criminal History Category of II.

13

**Sentencing Options**

Based on a total offense level of twelve and a Criminal
History Category of II, the Guidelines range of imprisonment is
twelve to eighteen months.

The guideline range for a term of supervised release is
at least two years but not more than three years. See U.S.S.G. §
5D1.2(a)(2). If a sentence of imprisonment of one year or less
is imposed, a term of supervised release is not required, but is
optional. See U.S.S.G. § 5D1.1(b). Supervised release is
required if the Court imposes a terms of imprisonment of more
than one year or when required by statute. See U.S.S.G. §
5D1.1(a).

Because the applicable guideline range is in Zone D of
the Sentencing Table, Darwiche is not eligible for probation,
pursuant to U.S.S.G. § 5B1.1, application note #2.

The fine range for the instant offense is from $3,000
to $2 million. See U.S.S.G. § 5E1.2(c)(3)(A) and (c)(4).

Pursuant to U.S.S.G. § 5E1.1(a)(1), in a case with an
identifiable victim, the Court shall enter a restitution order
for the full amount of the victim's loss if such order is

14

authorized under 18 U.S.C. § 3663A.

## The Remaining Factors of Section 3553(a)

Having considered the Guidelines calculations, as set forth above, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a). Pursuant to all of the factors, it is hereby determined that a guideline sentence is warranted.

## The Sentence

An offense level of twelve and a Criminal History Category of II results in a Guidelines range of twelve to eighteen months. Accordingly, a term of 366 days is hereby imposed.

Darwiche is also hereby sentenced to two years supervised release. Darwiche shall report to the nearest Probation Office within 72 hours of release from custody, and supervision will be in the district of his residence.

As mandatory conditions of supervised release, Darwiche shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a

15

firearm or destructive device; and (4) cooperate in the
collection of DNA as directed by the probation officer.

Darwiche shall comply with the standard conditions of
supervision and shall also comply with the following special
conditions: (1) he shall provide the probation officer with
access to any requested financial information; (2) he shall not
incur new credit charges or open additional lines of credit
without the approval of the probation officer unless he is in
compliance with the installment payment schedule; and (3) he
shall submit his person, residence, place of business, vehicle or
any other premises under his control to a search on the basis
that the probation officer has reasonable belief that contraband
or evidence of a violation of the conditions of release may be
found, which search must be conducted within a reasonable time
and in a reasonable manner.

The defendant shall make restitution payable the Clerk,
U.S. District Court, for disbursement to Coach Inc., in an amount
of not more than $22,810.

If the defendant is engaged in a BOP non-UNICOR work
program, the defendant shall pay $25 per quarter toward the
criminal financial penalties. However, if the defendant
participates in the BOP's UNICOR program as a grade 1 through 4,
the defendant shall pay 50% of his monthly UNICOR earnings toward

16

the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. 545.11.

The balance of the restitution shall be paid in monthly installments of 20 percent of gross monthly income over a period of supervision to commence 30 days after the date of the judgment or the release from custod.

The factors in 18 USC 3664 (f)(2) were considered in formulating the payment schedule.

Darwiche shall also pay to the United States a special assessment in the amount of $100, which shall be due immediately. Due to the imposition of restitution, the fine in this case is waived.

It is so ordered.

**New York, NY**
**December**   **/2**   **, 2005**

ROBERT W. SWEET
U.S.D.J.